BUTASH *v.* STATE OF INDIANA.

[No. 26,802. Filed June 23, 1937. Rehearing denied September 21, 1937.]

John H. Kingsbury, Albert M. Block, D. J. Bentall and H. E. Baker, for appellant.

Omer Stokes Jackson, Attorney-General, and A. J. Stevenson, Assistant Attorney-General, for the State.

ROLL, J.—Appellant was charged by affidavit filed in the Steuben Circuit Court with the crime defined by §10-1302 Burns Ind. St. 1933, §2400 Baldwin's 1934, which reads as follows:

> "It shall be unlawful for any person to advocate or incite, or to write or with intent to forward such purpose, to print, publish, sell or distribute any document, book, circular, paper, journal or other written or printed communication in or by which there is advocated or incited, the overthrow by force or violence, or by physical injury to personal property, or by the general cessation of industry, of the government of the United States, of the State of Indiana, or all government."

The affidavit upon which appellant was tried and convicted is as follows:

> "Paul Jackson, being duly sworn, upon oath says that on or about the 19th day of May, 1936, at and in the County of Steuben and State of Indiana, one Paul Butash did then and there unlawfully and feloniously advocate and incite at a public gathering in a public place in the City of Angola, Indiana, then and there situate, by then and there advocating, advising and inciting the overthrow by force and violence and physical injury to personal property and by the general cessation of industry of the government of the United States, of the State of Indiana, and all government, by then and there advocating, advising and inciting, by then and there saying the following, to wit:
>
> 1st. That he is sponsored by Soviet Russia.
> 2nd. That he favored the overthrow of the constitution and the government of the United States by armed forces.

3rd. That he favored the seizing of the United States government by revolt.

4th. That we had the revolution of 1776 and now we will have the revolution of 1936.

5th. That the masses should overthrow the "rich uncles" of Wall Streeet by seizing their property.

6th. That he favored the overthrow of our constitution of the United States by armed force.

7th. That all colleges belong to the student body.

8th. That all business belong to the masses.

9th. That all factories, if not given up peacably, should be seized and operated by the masses, the former owner being put on the same wage as the mass workman.
then and there being contrary, etc. . . ."

There was a trial by jury and a verdict of guilty as charged returned. Judgment was rendered on the verdict. Appellant's motion for a new trial was overruled and exceptions were taken. Appellant's motion for a new trial challenges the sufficiency of the evidence to support the verdict, and this calls for a review of the evidence.

The following are the material facts as disclosed by the record.

Appellant was a solicitor for the *Literary Digest,* and on May 19, 1936, appeared at the grocery store owned and operated by Burton Richardson in the city of Angola, Indiana. After canvassing Mr. Richardson and Algin A. Ewers for subscriptions to the *Literary Digest,* he conversed with Mr. Ewers. During this conversation appellant stated (quoting from Mr. Richardson's testimony, p. 34 of the transcript) :

"They . . . The part I heard of it, Mr. Butash said that we had to change our system of government. He demonstrated by putting three marks on a sheet of paper, one mark was a shoe factory for the rich, the second mark was a shoe factory for

the middle class, and the third for the poor class, which he said were made out of paper . . . the soles were made out of paper, he said, and we should do away with the second and third class and all wear good shoes the same as the rich man out of the first factory."

The witness was asked for any further conversation and answered:

"We asked him how we were going to do this and he said Mr. Butash said the masses would take care of this. He finally said we'd do that through a revolution. . . . Mr. Butash said there was the war of '76 and the Civil War, and there was going to be one more, the Revolution; and the Revolution of 1936 would be the same thing. . . . He said we'd have to have a revolution to change our form of government, and Mr. Ewers asked him what he meant by revolution, the same as the Civil War, and he said 'yes'."

During appellant's conversation with Mr. Ewers, one George F. McNeal came into the grocery store while appellant and Mr. Ewers were talking about a factory. McNeal stopped and listened and testified as follows:

"Well, then he got to talking about the shipload of spices being brought over and only taking back a part of a load of tractors in return. He says under the new government it will be different. Every man . . . All that middle man profit will be taken out. If a man produces a bushel of wheat and sells it, there is no middleman's profit. It goes direct to the man that buys it. I asked him how he was going to bring those conditions about and he says, the masses are to take over the factories, and all the business and everything, even the government. I says, 'How do you propose to take over the government?' and he says, 'We've got to overthrow Wall Street and the government; take the Washington government.' And I says, 'How do you propose to do that?' and he says by revolution. And I says, 'What do you mean by revolution?' and he says, 'By having an army to go in there with armed force and take it away from them, even though blood flows.'"

After the above conversation was had in the grocery store Mr. Ewers told appellant that he had some friends that he thought might be interested in hearing him (appellant) talk and arranged a meeting that evening at a hall used for public meetings of various kinds. At the meeting in the evening some thirty or forty persons were present and appellant made a short talk. One witness testified that most of his talk was confined to a party he called the Farm-Labor party. He said conditions were getting worse in this country, and it was time the poorer or middle class of people were doing something about it. And that was the purpose of arranging some kind of party to rectify it. When appellant was introduced he said he wasn't much of a speech maker, but that he would do the best he could, and after that anyone could ask any question they desired and he'd answer it to the best of his ability. After his speech questions were asked by different ones and appellant answered. The substance of the questions asked and the answers given thereto are as follows. Charles Rodebaugh testified:

"I asked him three questions. The first one was, he was talking about doing away with such people as Henry Ford and Andrew Mellon and that class of people, and I asked how, and he said the masses would take care of it. And I asked how about the constitution of this country, that didn't provide for that, and he said that was just a theory and anybody could write that. And I asked him how many people are organized and he didn't answer that."

The witness further testified that he heard Lee Hirsch ask him the following question:

"Was the purpose of the organization to overthrow the government by armed force?" and the answer was, 'Yes, if need be.' "

Another witness testified that someone asked:

"How do you expect to get control of the Senate

and Congress, of the Government; and he said, by revolutionary action. He was asked what he meant; armed force? and he said, 'Yes, if necessary.' "

It appears from the affidavit that appellant was called upon to defend against the language used by him at the public meeting in the evening of May 19, and not what he said at the grocery store on the afternoon of that date. The evidence shows that the public meeting was arranged by the very persons who afterwards appeared as witnesses for the state, and appellant was invited to attend and speak at this meeting. Appellant did appear and when called upon to make a speech, stated that he was not a speech-maker, but the record shows that he made a very brief talk about the "Farm-Labor" party. What he said upon that subject is not disclosed. After he had finished his remarks, he was asked questions by different ones in the audience. It is the language used by appellant in answering the questions put to him by the state's witnesses that appellee contends violates the statute hereinabove quoted. The word "advocate" as defined by Webster means "to plead in favor of; to defend by argument before a tribunal or the public; to support, vindicate or recommend publicly." The word "incite" is defined by the same author to mean "to move to action; to stir up; to spur or urge on."

We have read and re-read the evidence from the record, and find ourselves unable to determine with any degree of certainty the meaning of the various indefinite, confused, and muddled statements made by appellant. The evidence is disconnected, and purports to be only fragments of what he said, and in some instances only purports to be the witness' own conclusion, and not what was actually said by appellant. The evidence, taken most strongly against appellant, was only the expression of his own opinion upon the economic or

political questions of the times, and a possible partial solution for them, or else a mere statement of an existing fact or facts. The questions asked appellant assumed that there was something wrong with our system of government, and our economic set up, and were asked appellant for the purpose of eliciting from him what he thought was the solution of those problems, or else for the purpose of inciting him to violate the statute. His answers therefore were the expression of his opinion of how such problems might be solved. Nowhere did he plead for the adoption of his theory, or defend them by argument, nor did he incite anyone within the meaning of the statute. No one could reasonably say from the evidence in this case that appellant violated any of the provisions of the above statute. After fully considering the evidence in the record we are almost persuaded to say that the whole incident was so trivial as to be beneath the notice of the law. There is no evidence upon which the verdict of guilty could rest, and therefore the verdict is not supported by sufficient evidence and is contrary to law.

Having reached the conclusion that the evidence is insufficient, and that the verdict is contrary to law makes it unnecessary for us to discuss or decide the other questions urged by appellant.

Judgment reversed with instructions to the trial court to set aside the judgment and sustain appellant's motion for a new trial.